Earl, J.
 

 A judgment was entered in this action upon the report of a referee, commanding the defendant to levy and collect a tax to pay the plaintiff an award made for lands taken for a street in the village of Whitney’s Point. The defendant refused to levy a tax to pay the award, upon the ground that the proceedings for laying out the street for which the lands were alleged to have been taken were illegal and wholly void, so that no obligation to pay the award was ever imposed upon the village. The general term sustained the contention of the defendants, and reversed the judgment of the referee, holding that the proceedings for laying out the street were wholly void for various reasons stated in the opinion there pronounced. We think the judgment was properly reversed, and we base our decision upon a single ground, without considering the others alleged.
 

 The village of Whitney’s Point was organized under the general act for the incorporation of villages. Chapter 291, Laws 1870. It is provided in section 1 of title 7 of that act, as amended by chapter 870 of the Laws of 1871, that the trustees of the village shall have power to lay out streets;
 
 *2
 
 that for that purpose they may take and appropriate any lands, but that no street shall be opened unless all claims for damages on account of such opening shall be released without remuneration, except on the written petition of at least ten freeholders residing in the village, which petition shall specify the improvements to be made, describe the land to be taken, and state the owner or owners thereof; that on the presentation of such petition the trustees shall meet and examine the same, and if they decide the improvement shall be made, that they shall so decide, by resolution to be entered in the minutes of the board; that they shall'thereupon post up, in five public places in the village, a correct description of the lands to be taken to make such improvement, and a notice that the trustees, at a place and time therein specified, will meet and hear any objections that may be made to the taking of such lands or making such improvement, a copy of which notice must be served on the owner or owners of such lands at least five days before such meeting, unless the owner is a non-resident of such village; that any person interested may be heard and introduce testimony before the board of trustees as to the matter, on the day specified in the notice, or on such other days as the board may appoint; that after such hearing the trustees may deny the petition, or approve and declare, by resolution to be entered in their minutes, their intention to make such improvements, and proceed to obtain possession of the land described in the manner provided by the act.
 

 The last two courses of the center line of this street, as described in the petition, are as follows : “Running easterly .six rods, or thereabouts, to Jabez Johnson’s land; thence southerly fifty-seven rods, or thereabouts, to Main street, in said village, about twenty feet west of said Johnson’s house.” In the notice posted and given by the trustees the street is described in the same way. In laying out the street, the last fine, at its northerly end, was moved one rod further to the east, and the two last lines of the street, as finally laid out, are as follows: “Running easterly six rods, or thereabout, to a point one rod east of the east line of said railroad company’s land; thence southerly fifty-seven rods, or thereabouts, in a straight course to Main street, in said village, at a point twenty feet west of said Jabez Johnson’s house, on Main street.” The last line was purposely changed by the' trustees after the hearing provided for in the notices given by them; and the street, as finally laid out, takes more land from Johnson, and less land from the railroad company.
 

 We think the trustees had no power to make this change. They were bound to lay out the street upon the precise fine designated in the petition. The petition was required to
 
 *3
 
 describe the lands to be taken; the notices, which the trustees were to post and serve, were required to contain a correct description of the land; and the notices were to state that at a particular time the trustees would meet to hear objections to the taking of such lands. The object of the hearing was not to determine the line or route of the street, but to determine whether or not the petition should be granted, and, after the hearing, the trustees could deny the petition, or declare, by resolution, their determination to make the improvement, and proceed to obtain possession of the lands described. If, upon the hearing, or at any time after presentation of the petition, before final action thereon, and before the road was actually laid out, the trustees found it was necessary to change the fine or route, or to take other land not specified in the petition, then the proceedings should have been abandoned, and a new petition filed, and a new proceeding commenced
 
 de nova.
 
 It is true that the variation is not great; but if a change in the center line of the road for one rod can be justified—if the trustees had jurisdiction to make such a change—then it is difficult to perceive how their power could be limited. They might change the road for two rods or three rods, and thus take lands not described in the petition, or in the notice which they were required to give, and the only limitation upon their power would probably be that they were to lay the street in substantially the same direction as that mentioned in the petition, and through the same land. We think the safer and better rule, the application and operation of which can cause no great inconvenience or embarrassment, is to hold that the trustees in such cases must follow the precise description contained in the petition.
 

 It matters not that Johnson, the owner of the land, consented to this change in the line of the street through his land. He is not the only person interested. The change increases the amount of land to be taken from him, and might have enhanced the expense of the street. It is a question of power and jurisdiction. If this street was not legally laid out; if Johnson’s land was not legally taken; if the entire proceeding was void, and the statute was so far departed from as to deprive the trustees of jurisdiction— then any tax-payer could raise the objection when it was attempted to levy a tax to pay the awards made for the land taken, and the trustees could not be compelled to levy and pay a tax which the tax-payers could not be compelled to pay, and which they could not enforce.
 

 We are therefore of opinion that the order of the general term should be affirmed, and judgment absolute rendered var the defendants, with costs.
 

 All concur, except Rapallo, J., absent.