247 So.2d 218 (1971)
Harold ALLEY
v.
NEW HOMES PROMOTION, INC. (consolidated with Vanguard Homes, Inc. v. New Homes Promotion, Inc. No. 4354).
No. 4331.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 1971.
Rehearing Denied May 10, 1971.
Writ Refused June 16, 1971.
Morphy, Freeman & Batt, A. D. Freeman, Jr., New Orleans, for plaintiff-appellee.
*219 Bernhardt C. Heebe, New Orleans, Odom B. Heebe, Metairie, Salvadore T. Mule, New Orleans, Steeg & Shushan, Donald A. Meyer, New Orleans, for defendant appellant.
Before LEMMON, GULOTTA and STOULIG, JJ.
LEMMON, Judge.
Harold Alley offered to purchase certain lots owned by New Homes Promotion, Inc. in Driftwood Subdivision in Jefferson Parish. New Homes now appeals a judgment ordering the return of that portion of the deposit attributable to lots, the sale of which was not consummated within the time specified in the contract.
On October 15, 1965, Alley signed an agreement to purchase twenty-two lots from New Homes. On the same day he additionally signed two other agreements, identical in form, whereby he agreed to purchase one lot in each agreement. Above Alley's signature on each agreement was typed "NEW HOMES PROMOTIONS, INC. By: Ellie H. Schill."
The deposit required by each agreement was given by Alley and accepted by New Homes.
The agreements provided in pertinent part:
* * * * * *
"Act of Sale at expense of Purchaser to be passed before Notary Public on or prior to 30 days after completion of all improvements and acceptance by city of Kenner and all Governmental authorities." (Emphasis supplied)
"In the event the Seller fails to comply with agreement, the purchaser shall have the right to demand the return of his deposit in full.
"In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso-facto, forfeited, without formality beyond tender of title to purchaser; or the Seller may demand specific performance." (Emphasis supplied)

* * * * * *
Before the improvements were completed and accepted, Alley took title to the two lots described in the individual agreements and to one of the twenty-two lots described in the agreement which is the subject of this suit. Of the $11,000.00 deposited in connection with the latter agreement, $500.00 was applied to the purchase price of the one lot, leaving $10,500.00 on deposit with New Homes.
On July 26, 1967, the completed improvements were accepted by the governmental authorities. The next day the following letter was sent to the 32 participants in the Parade of Homes who had agreed to buy lots in the subdivision:
"TO ALL DRIFTWOOD BUILDERS:
"Final approval of Driftwood Subdivision was granted by the City of Kenner Tuesday, July 26. Your agreement with New Homes Promotion requires you to take title no later than thirty days following this approval. You will, therefore, be expected to take title to all of your lots in this first section no later than Thursday, August 25.
"I am sure you are pleased with the public response to Driftwood and I want to compliment each of you on an outstanding job on your Parade homes.
 "Sincerely yours,
 /s/ Ellie H. Schill
"d Ellie H. Schill"
The thirty day period passed without further action by either party. New Homes made subsequent demand after August 25, but Alley did not take title to any additional lots and eventually sued for return of the $10,500.00 balance on deposit.
Alley contended that the agreement was not legally binding, since it was never accepted *220 in writing, and further that the letter of July 27, 1966 did not constitute tender of title as required by the agreement to purchase.
The trial court held that there was a valid contract, but that there was not a valid tender of title within the time for performance of the contract. After an adverse judgment below, New Homes returned the deposit and appealed devolutively.
A promise to sell immovable property must be vested with the same formalities as are prescribed for sales of immovable property. It must be in writing. Oeschner v. Keller, 134 La. 1098, 64 So. 921 (1914). But a written promise to sell may be enforced, although not signed by the obligee. Miller v. Douville, 45 La.Ann. 214, 12 So. 132 (1893); Joseph v. Moreno, 2 La. 460 (1831).
The cases cited by Alley, Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879 (1954) and Barchus v. Johnson, 151 La. 985, 92 So. 566 (1922), are not controlling here. These cases hold that acceptance of an option must be in writing. This "acceptance" does not refer to the signature on the contract of option itself, but to the agreement or notification by which the purchaser elects to exercise his rights under the option. The option itself was previously "accepted" or consented to by both parties.
In this case the agreement to sell was in writing, but the acceptance of the seller was not evidenced by his executed signature. We believe, as do an overwhelming majority of the jurisdictions in this country,[1] that an acceptance of a written offer may be proved by some unequivocal act of the offeree, if the terms of the contract are clearly indicated in the written offer.
Furthermore, the acceptance was evidenced by a typed[2] signature, which showed a clear and affirmative consent to be bound and which was subsequently ratified by New Homes, who accepted the required deposit and delivered title to one lot under the terms of the agreement, crediting a portion of the deposit toward the price of the lot thus sold.
Additionally, there is no contention that the purchaser withdrew the offer at any time, and in fact Alley only learned after filing suit that the accepted offer did not bear the handwritten signature of the seller.
We therefore conclude that there was a meeting of the minds after the written agreement was confected, and that the written contract was accepted and consented to by both parties, and was valid and binding on each.
The appeal therefore narrows itself to the effect of the letter of July 27, 1966, which New Homes contends was a tender of titles. Since New Homes did nothing further during the contract period, their success in this suit depends on this letter constituting tender of title.
The obligation was contracted on a suspensive condition, the completion of the improvements and the acceptance by the proper governmental authorities. Until the condition was fulfilled, the obligation could not be enforced. LSA-C.C. art. 2043. New Homes therefore notified Alley and 31 other purchasers by circular letter on July 27, 1966, that the condition had been fulfilled and that the 30 day period for passage of the act of sale had commenced to run. This form letter of notice that the period for taking title had commenced can hardly be construed as a tender of title.
In order to activate the penalty clause in this contract, the seller must make a formal *221 tender of title.[3] In other words, the seller must tender title by formally tendering performance. Without the requirement of a formal tender of title, each party could let the time period expire and each could contend in a swearing contest at trial that he was ready and willing to perform within the contract period. The language of the contract clearly negates a theory of the purchaser automatically being in default by failing to perform.[4] Indeed, implicit in the requirement of tender of title by the seller in order to impose the penalty is failure by the purchaser to take title. The purpose of the tender is to put the purchaser on notice that failure to perform his obligation under the contract will subject him to forfeiture of his deposit.
In this case there was neither a tender nor a refusal during the period provided in the agreement. The contract therefore expired by its own terms on August 25, 1966, and Alley is entitled to the refund of his remaining deposit. Pacholik v. Gray, 187 So.2d 480 (La.App. 3 Cir. 1966).
Furthermore, there is no merit to New Homes' argument that its subsequent demands and allowances of opportunities for Alley to take title extended the original agreement beyond August 25, 1966, since a valid extension must be in writing and accepted by both parties to the original agreement. Harrell v. Stumberg, 220 La. 811, 57 So.2d 692 (1952).
Accordingly, the judgment of the district court is affirmed, defendant-appellant to pay all costs.
Affirmed.
NOTES
[1] 30 A.L.R.2d 972.
[2] In a separate case, Vanguard Homes, Inc. v. New Homes Promotion, Inc., La. App., 247 So.2d 221, consolidated on appeal and decided this day, acceptance was by a stamped facsimile signature.
[3] In this particular agreement the seller could fail to perform, apparently at his whim or fancy, and the purchaser's only contractual remedy would be to get back the money that already belongs to him. On the other hand, the purchaser's failure to perform gives the seller the contractual remedy to forfeit the deposit or demand specific performance.

This raises a serious question of mutuality of remedy, since the contract may be unenforceable because one party has an adequate remedy to enforce the agreement and the other party has none. See LSA-C.C. art. 2024 and 2034; Corbin on Contracts § 152 (1952).
In view of our holding, it is unnecessary to discuss this issue further, as it was not argued by the parties.
[4] See Everhardt v. Sighinolfi, 232 La. 996, 95 So.2d 632 (1957) in which identical contractual language was used.