335 So.2d 767 (1976)
Paul Allen MILLER and Darlene S. Miller, Plaintiffs-Appellants,
v.
Floyd J. MILLER, Defendant-Appellee.
No. 5499.
Court of Appeal of Louisiana, Third Circuit.
July 6, 1976.
Rehearing Denied August 18, 1976.
*768 Edwards, Stefanski & Barousse, by Homer E. Barousse, Jr., Crowley, for plaintiffs-appellants.
Aaron, Aaron & Chambers by J. Donald Aaron, Crowley, for defendant-appellee.
Before HOOD, WATSON and PETERS, JJ.
PETERS, Judge ad hoc.
This suit concerns a promise to sell a parcel of land. The promise was made by plaintiffs, who are husband and wife, in favor of defendant. Plaintiff prays in this suit that the promise to sell be declared null and void and that it be stricken from the records of Acadia Parish.
The disputed agreement was executed on September 6, 1968. Plaintiff Paul Miller and defendant Floyd Miller are brothers. In the act plaintiffs promised that when they, or the survivor of them, no longer resided upon the parcel of land they would sell the property to defendant for $100.00. Plaintiffs recited in the act that the promise to sell was being made for a cash consideration of $10.00, receipt of which was acknowledged.
The evidence presented at trial of this matter showed defendant and his father had previously owned the subject property in indivision. There was a small house owned by Texas Eastern Oil Company situated on the property. Paul Allen Miller and his wife wished to purchase the house and wanted to leave it on Floyd Miller's property and to live in it. Floyd offered to let his brother and his wife reside on this property without charge. However, Paul needed to borrow $1800.00 in order to purchase the house from Texas Eastern and he needed to mortgage the land to secure *769 the $1800.00 loan. Floyd and his father therefore sold the property to Paul for $100.00. However, it was agreed orally the land would be sold back to Floyd in the event Paul and his wife ever moved off the property. This agreement was not reduced to writing until 1968, when plaintiffs, at defendant's insistance, signed the promise to sell. The promise to sell was drawn up by, and executed before, defendant's attorney, who had also witnessed the 1964 sale. However, defendant was not present when the promise to sell was executed and he never signed it or otherwise gave any indication in writing of his acceptance of this contract. The act is merely a unilateral promise to sell. It was conceded by Floyd he never paid the $10.00 consideration recited in the agreement.
The lower court held the agreement valid and dismissed plaintiffs' suit. Plaintiffs have appealed. We find the promise to sell to be valid and enforceable and therefore affirm.
Plaintiffs argue the promise to sell is invalid because the $10 consideration recited in the document was never paid. This argument is without merit. The evidence adduced at trial clearly established the promise to sell was executed in accordance with an oral agreement reached at the time the tract was sold to plaintiffs in 1964. Defendant at that time did not intend to permanently divest himself of the land; the inducement for the 1964 sale was the promise by plaintiffs that they would return the land to defendant when they ceased to reside on it. Thus the true cause for the promise to sell was the 1964 sale and the contract therefore was not invalid for lack of cause. L.S.A.-C.C. 1900.
Plaintiffs also contend the promise to sell is invalid because it was never signed by the defendant. We cannot agree with this contention. L.S.A.-C.C. 2462 requires that a promise to sell must be in writing in order to entitle either party to specific performance. There is no requirement that the writing be signed by both parties. In Joseph v. Moreno, 2 La. 460 (1831), the court considered the validity of a promise to sell which was in writing but was not signed by the vendee. The court held the acceptance by the vendee could be established by evidence extraneous to the written instrument. To the same effect are the holdings in Crocker v. Nuley, 3 Mart. (N.S.) 583 (1825) and Saunders v. Bolden, 155 La. 136, 98 So. 867 (1923). Similarly, it has been held a written receipt for the purchase price is sufficient evidence of a sale, Bordelon v. Crabtree, 216 La. 345, 43 So.2d 682 (1949); Guice v. Mason, 156 La. 201, 100 So. 397 (1924), as is a letter by which the vendor acknowledged that a sale had been consummated, Bair v. Abrams, 12 La.Ann. 753 (1857). In none of these cases was the writing signed by the vendee, but the writings nonetheless were held to be admissible to establish the sales. The requirement of written evidence being the same for a promise to sell as for a sale, these decisions are applicable to the case now before us. The evidence presented at trial leaves no doubt that the defendant-vendee did give his assent to the contract. In fact, the instrument was drafted by defendant's attorney at defendant's request.
Plaintiffs also contend the contract is invalid because they misunderstood its provisions. This argument does not merit considerable discussion herein. We feel it sufficient to note the wording of the instrument is clear and unambiguous and defendant's attorney explained the provisions of the instrument to plaintiffs.
Plaintiffs further argue the promise to sell is invalid because there is no time limit established for the execution of the contract. This argument would have some merit were we dealing with an option, but L.S.A.-C.C. 2462 does not require that any time limit be stipulated in a promise to sell. The parties herein agreed title *770 would be transferred when plaintiffs, or the survivor of them, ceased to reside on the property. Although this event may not occur until many years after the promise to sell was made, the promise to sell meets the requirements of L.S.A.-C.C. 2462 and is therefore valid.
For the reasons assigned, the judgment of the lower court is affirmed at plaintiffs-appellants' costs.
Affirmed.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge (dissenting):
The instrument in question gives a right of redemption. If valid initially, it is no longer valid under codal articles 2567-2588, which provide for a rigorously enforced maximum period of ten years for reservation of such a right, even as to minors. The deed from Floyd Miller and his father, Meus J. Miller, to Paul Allen and Darlene S. Miller was recorded January 15, 1964; the instrument purporting to be a right of redemption was executed and recorded December 21, 1973, almost ten years later. Even if Floyd Miller reserved a right of redemption, he could not reserve it as to the half sold by his father. LSA-C.C. arts. 2580, 2581. In the succession judgment rendered in the succession of their father, Meus J. Miller, Floyd Miller received his share, less and except a 100' x 150' tract of land previously transferred to Paul Allen Miller, the tract in dispute. There was no consideration paid for the right of redemption. It was executed and recorded long after the sale itself. It could only affect one-half of the property at most, and the right of redemption could only be good for ten years. The issues are legal rather than factual and I believe the trial court is wrong as a matter of law in dismissing plaintiffs' suit for nullification of the instrument. I respectfully dissent.